McKEAGUE, J., delivered the opinion of the court in which COOK, J., joined. MERRITT, J. (pp. 328-29; app. 329-32), delivered a separate dissenting opinion.
OPINION
McKEAGUE, Circuit Judge.
Samuel Gompers, founder of the AFL, wrote that “[wjherever trade unions are most firmly organized, there are the rights of the people most respected.” Samuel L. Gompers, Labor anb the Common Welfare (1919). But Gompers wasn’t quite right if Tanganeka Phillips’s claims are true; she alleges that one of the largest unions in North America discriminated against her on the basis of race. Specifically, she alleges that UAW International created a hostile work environment, actionable under Title VII and the Michigan Elliot-Larsen Civil Rights Act (ELCRA). The district court granted summary judgment for the defendants on the basis that Phillips’s Title VII hostile work environment claim can only be brought against an employer, not a union, and that UAW International was *325 not Phillips’s employer. We affirm on other grounds.
I
Tanganeka L. Phillips worked at the MGM Grand Detroit casino from June 1999 until September 2015. Beginning in 2001, Phillips belonged to Local 7777, a UAW International affiliate. In 2002, she became the Local’s chairperson. This case largely derives from her interactions in that role with two employees of UAW International, Brian Johnson and Dave Kagels. Phillips, who is African-American, asserts that Johnson’s and Kagels’s conduct created a racially hostile work environment in violation of both Title VII and the ELCRA.
To support her claim, Phillips describes a smattering of offensive conduct committed by Johnson and Kagels from 2012 to 2014. First, Phillips alleges that Kagels listed three union representatives by name and said he would fire them all if he could. All three people Kagels listed were black, so Phillips considered the statement racist. R. 34-2, Phillips Tr., PID 314 (“To me that was racially [sic] because he only singled out the black reps.”). Next, Phillips says Johnson told Phillips “[w]e need to put a black on staff to calm it down, and was [Phillips] interested?” Id. at PID 314. Phillips also describes an occasion when, addressing Dwight Braxton (another union member) in Phillips’s presence, Johnson said “oh, because you’re big and black. You’re her bodyguard, I’m supposed to be afraid of you.” Id. at PID 312. Phillips also alleges that Johnson once said that the “problem with the Union was that there are too many blacks in the union.” R. 39-6, Phillips Aff., PID 919; see also R. 39-5, Braxton Tr., PID 913. Otherwise, the allegations are more general: that Johnson often behaved violently, that he made frequent racial comments, and that he spoke in a condescending tone when dealing with black union members as compared to white members. R. 39-2, Phillips Tr., PID 894; R. 39^, Catinella Tr., PID 910; R. 34-2, Phillips Tr., PID 311-12 (“Well, he said' so many racial remarks to me it’s kind of hard to remember ... he said so many of them.”). But Phillips also testified that she met with Johnson “very rarely.” R. 34-2, Phillips Tr., PID 309.
Additionally, and perhaps most troubling, Phillips claims that, in a 2013 meeting she attended with Braxton, Johnson demanded to know the race of each griev-ant and then separated the grievances into piles based on whether they were filed by “white” or “black” union members. Phillips says that, before abruptly ending the meeting, Johnson rubber-banded the two piles and said he intended to withdraw the grievances filed by African-American union members.
Finally, Phillips also testified that, to her knowledge, Johnson actually did withdraw those grievances. But the record belies that claim. See R. 35-3, McIntosh Aff., PID 686-97 (memorializing that grievances Phillips says Johnson dismissed based on race were not dismissed by the union). For their part, Johnson and Kagels deny all of the alleged misconduct.
Phillips’s complaint alleges that UAW International, Johnson, and Kagels violated Title YII and the ELCRA.[1] The district court granted the defendants’ motion for summary judgment and dismissed the case. This appeal followed in which the *326 EEOC filed a brief as amicus curiae in support of Phillips.[2]
II
We review the district court’s grant of summary judgment de novo. Romans v. Mich. Dep’t of Human Services, 668 F.3d 826, 835 (6th Cir. 2012). Summary judgment is appropriate if “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). We view evidence and draw all inferences in favor of the non-moving party to determine whether the plaintiff has presented sufficient evidence from which a jury could reasonably find in its favor. See Romans, 668 F.3d at 835. We “may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied.” Stein v. Regions Morgan Keegan Select High Income Fund, Inc., 821 F.3d 780, 786 (6th Cir. 2016).
A
Title VII prohibits both employers and labor unions from discriminating on the basis of race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)-(c). Here, Phillips alleges the union violated Title VII by creating a hostile work environment on the basis of race — a claim she brings against the union in its capacity as employer under § 2000e-2(a) and in its capacity as union under § 2000e-2(c). Phillips’ first theory presents a run-of-the-mill agency question: is Phillips an employee of UAW International? But her second theory is novel; this court has never addressed whether § 2000e-2(c) covers hostile work environment claims brought against a union qua union.
And there is a question there — perhaps a close one — because Congress wrote Title VII with different language in the relevant employer and union subsections. Only in the employer subsection is there a specific prohibition on discrimination with respect to “compensation, terms, conditions, or privileges of employment.” Id. § 2000e-2(a). Importantly, that language is the statutory origin of Title VII hostile work environment claims. See Vance v. Ball State Univ., — U.S. -, 133 S.Ct. 2434, 2440-41, 186 L.Ed.2d 565 (2013); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). That this claim-originating language is missing from Title VII’s union subsection was enough for the district court to conclude that unions are not liable for such claims. That is, because Title VII’s “terms and conditions” language is the basis for hostile work environment claims but absent from Title VII’s union subsection, the district court held that unions qua unions are not liable under Title VII for hostile work environment claims. See R. 47, Dist. Ct. Op., PID 1172.
But there are good reasons to question the district court’s reading. For one thing, at least one other circuit has come to the opposite conclusion. See Dowd v. United Steelworkers of Am., Local No. 286, 253 F.3d 1093, 1102 (8th Cir. 2001). For another, applying the usual tools of statutory interpretation to § 2000e-2(c)(l)’s text might support a reading that Title VII prohibits unions from creating hostile work *327 environments, just like it does for employers.
However, whether unions can be held liable for a Title VII hostile work environment claim is only at issue if- Phillips has made the adequate showing that there was a hostile work environment. She hasn’t. Thus, we need not reach either the more mundane agency question or the more interesting interpretive question Phillips’ Title VII claims raise. In the interests of judicial economy, we decline to. Cf. Pearson v. Callahan, 555 U.S. 223, 236-37, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
B
A hostile work environment claim requires proof that (1) plaintiff belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action. See Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1078-79 (6th Cir.1999).[3] The district court found Phillips had created a genuine issue of material fact as to these showings. See R. 47, Dist. Ct. Op., PID 1167-69. We review de novo. See Clay v. United Parcel Serv., Inc., 501 F.3d 695, 700, 707-08 (6th Cir. 2007). Because it is dipositive, we begin with the fourth factor.
On summary judgment, we look at the totality of the alleged race-based harassment to determine whether it was “sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.” Williams v. CSX Transp. Co., 643 F.3d 502, 512 (6th Cir. 2011) (alteration in original) (quoting Harris, 510 U.S. at 21, 114 S.Ct. 367). “In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.” Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal citation omitted). Significantly, “isolated incidents (unless extremely serious) will not amount to discriminatory changes in the ‘terms and conditions of employment.’ ” Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Thus, occasional offensive utterances do not rise to the level required to create a hostile work environment because, “[t]o hold otherwise would risk changing Title VII into a code of workplace civility.” Grace v. USCAR, 521 F.3d 655, 679 (6th Cir. 2008) (internal quotation marks omitted).[4]
*328 Accordingly, this court has found even offensive and bigoted conduct insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough to satisfy the claim’s requirements. See, e.g., Williams, 643 F.3d at 506, 513 (finding no hostile work environment where defendant “call[ed] Jesse Jackson and A1 Sharpton ‘monkeys’ and [said] that black people should ‘go back to where [they] came from’ ” among other racist comments); Reed v. Procter & Gamble Mfg. Co., 556 Fed.Appx. 421, 432 (6th Cir. 2014) (no hostile work environment where plaintiff was subjected to race-based comments and his supervisor stood behind him and made a noose out of a telephone cord); Clay, 501 F.3d at 707-08 (fifteen racially-motivated comments and instances of disparate treatment over a two-year period were isolated, not pervasive, and therefore not actionable under Title VII). We find the same here.
Phillips specifically identifies several racially offensive statements made over a period of two years: (1) Kagels listing union reps he would fire; (2) Johnson saying that they needed “another black on staff’; (3) Johnson’s big-black bodyguard comment; and (4) Johnson’s “too many blacks” in the union comment. Phillips also alleges that, in a meeting she attended with Brax-ton, Johnson separated grievances based on race and said he would dismiss them.
These incidents, if true, are offensive and condemnable. But they are not actionable as a hostile work environment. Like in Williams, Reed, Morris, and Clay, the incidents were isolated and not pervasive or severe enough to alter the terms and conditions of Phillips’s employment. As that line of decisions shows, this court has established a relatively- high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory. The misconduct alleged here — a handful of offensive comments and an offensive meeting over a two-year period— does not clear that bar.[5]
In short, no matter who can be held liable for hostile work environment claims under Title VII, Phillips fails to create a genuine issue of material fact that she was subjected to one. Thus, defendants are entitled to summary judgment on her Title VII claims. Her ELCRA claims fail under the same analysis. See Quinto, 451 Mich. at 368-72, 547 N.W.2d 314.
Finally, we affirm the district court’s denial of Phillips’s motion for reconsideration. On appeal, she does not provide any analysis, explanation, or case law in support of reversal. Such conclusory arguments are deemed waived. See Kuhn v. Washtenaw Cnty., 709 F.3d 612, 624 (6th Cir. 2013).
Ill
Thus, for the foregoing reasons, we AFFIRM the district court’s grant of summary judgment in favor of the defendants.

. The complaint also included claims against MGM and Rozell Blanks, which have been dismissed by stipulation.

. The dissent believes we “unfairly interpret and distort the facts,” so it attaches the facts section from the EEOC’s amicus brief. The record shows, however, that instances the EEOC listed as separate occurrences were actually just Phillips’s multiple characterizations of the same event. No matter, our holding would be the same under the EEOC's slightly different retelling.

. The elements are substantially the same for Phillips’s ELCRA claim. See Quinto v. Cross & Peters Co., 451 Mich. 358, 368-69, 547 N.W.2d 314 (1996).

. The dissent says that whether the conduct was severe or pervasive enough to constitute a hostile work environment is "quintessentially a question of fact” and so should be left for the jury. It cites Smith v. Rock-Tenn Services, Inc., 813 F.3d 298 310-11 (6th Cir. 2016) for that proposition. But Smith (which affirmed the denial of a defendant’s motion for judgment as a matter of law) did not strip this court’s authority to determine that offensive conduct is not severe or pervasive enough to constitute a hostile work environment at summary judgment nor reverse course on decades of precedent in which the court has done just that. See e.g., Warf v. U.S. Dep’t of Veterans Affairs, 713 F.3d 874, 878-79 (6th Cir. 2013); Barrett v. Whirlpool Corp., 556 F.3d 502, 518 (6th Cir. 2009); Clark v. United Parcel Serv., Inc., 400 F.3d 341, 352 (6th Cir. 2005); Akers v. Alvey, 338 F.3d 491, 499 (6th Cir. 2003); Morris v. Oldham Cty. Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000); Crawford v. Medina Gen. Hosp., 96 F.3d 830, 836 (6th Cir. 1996); *328 see also Graves v. Dayton Gastroenterology, Inc., 657 Fed.Appx. 485, 489 (6th Cir. 2016); Wade v. Automation Pers. Servs., Inc., 612 Fed.Appx. 291, 298 (6th Cir. 2015). That list could go on, but we believe it's sufficient to prove the point: we continue to apply "standards for judging hostility [that] are sufficiently demanding to ensure that Title VII does not become a general civility code.” Faragher, 524 U.S. at 788, 118 S.Ct. 2275 (1998) (internal quotation marks removed).

. Additionally, Phillips' testimony that she rarely interacted with Johnson limits any weight afforded her vague allegation that he made "many” offensive comments and the record flatly contradicts her claim that grievances were actually dismissed based on race.