NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0290n.06

No. 15-3359

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 23, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JOHN MILLS, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE NORTHERN |
| CHRISTOPHER LAROSE, | ) DISTRICT OF OHIO |
| | ) |
| Respondent-Appellee. | ) |
| | ) |

**BEFORE: KEITH, ROGERS and KETHLEDGE, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Petitioner John Mills ("Petitioner") appeals from the judgment of the United States District Court for the Northern District of Ohio, which dismissed his *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, and denied his request for certificate of appealability ("COA"). Thereafter, Petitioner sought a COA with this court. We granted in part Petitioner's application for a COA, but only as to his second claim: whether there is sufficient evidence to convict Petitioner of felony murder. For reasons that follow, the district court's denial of relief is **AFFIRMED**.

**I. Background**

The instant action arose from an August 27, 2009 brawl between members of two families – the Mills family and the neighboring Edwards family, with whom the Mills were engaged in a long feud. *State v. Mills*, No. 10CA119, 2011 WL 5444085, at *1 (Ohio Ct. App. Nov. 9, 2011) (opinion of Farmer, J.). When the brawl ended, Jim Mills was killed when his grandson, Kameron Mills, struck him in the head with a board. *Id.* Petitioner, who is Jim's son

and Kameron's father, was indicted for aiding and abetting Jim's murder, among other charges. *Id.*

In the lead opinion, Judge Farmer of the Ohio Court of Appeals stated that "the fact scenario in this case is very convoluted and confusing," as a result of "seven witnesses explaining their personal and limited observations of the incident." *Id.* at \*4. The fight resulted when Petitioner's two sons, Kyle and Kameron, confronted members of the Edwards family with "cussing and name calling." *Id.* This escalated into rock throwing, which resulted in the breaking of a tail light on Petitioner's vehicle. Petitioner's sons drove away in the vehicle and returned shortly thereafter with Petitioner. *Id.* Upon arrival to the scene, Petitioner was carrying a large walking stick and knife, while Kyle and Kameron each carried wooden boards. *Id.* at \*5. A wild brawl eventually ignited, which the Ohio Court of Appeals' lead opinion detailed by recounting the testimony of various witnesses and participants. *Id.* At one point, Petitioner choked Mack Edwards, Jr., held an unopened knife to his throat, and threatened to kill him. *Id.* At the end of the brawl, Jim Mills, who arrived at the scene and tried to stop the fight, was killed when Kameron struck him with a board. *Id.*

Petitioner was charged with aiding and abetting murder, aiding and abetting involuntary manslaughter, aiding and abetting felonious assault, and felonious assault. *Id.* at 1. A jury convicted him on all charges except the stand-alone felonious assault charge. The trial court merged the murder and involuntary manslaughter convictions and sentenced Petitioner to an aggregate prison term of fifteen years to life.

## II. Procedural History

On October 11, 2010, Petitioner timely appealed his conviction and sentence to the Ohio Court of Appeals. Petitioner raised the following three assignments of error:

> **Assignment of Error I:** Appellant was deprived of due process of law as guaranteed by the Ohio and U.S. Constitutions as a result of the ineffective assistance of counsel arising from failure to effectively object to or limit prejudicial "other acts" evidence; or in the alternative, it was plain error to permit the state's gratuitous use of such evidence.
>
> **Assignment of Error II:** Appellant's conviction of charges of felony murder and involuntary manslaughter are contrary to the manifest weight and sufficiency of evidence presented at trial, thus denying appellant a fair trial and due process of law under the Fifth and Fourteenth Amendments of the Constitution under Article 1, Section 16 of the Ohio Constitution.
>
> **Assignment of Error III:** The trial court's refusal to instruct the jury that it could consider self-defense as to counts 1 and II constitutes abuse of discretion, or in the alternative, plain error, thus depriving appellant of due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution and under Article 1, Section 16 of the Ohio Constitution.

*Mills*, 2011 WL 5444085, at *1. The Ohio Court of Appeals rejected these arguments and affirmed the judgment of the trial court. Subsequently, the Ohio Supreme Court denied Petitioner leave to appeal. *State v. Mills*, 962 N.E.2d 805 (Ohio 2012) (table). Petitioner filed a *pro se* motion to reconsider, which the Ohio Court of Appeals denied as untimely.

Thereafter, Petitioner filed his *pro se* petition for habeas relief in federal district court, pursuant to 28 U.S.C. § 2254, raising the following four claims for relief:

> **Claim One:** The petitioner is actual [sic] innocent of felony murder and of aiding and abetting involuntary manslaughter. The indictment and Bill of Particulars lack any predicate felony offense to convict of felony murder. The petitioner had no control over the perpetrator who acted against the victim.
>
> **Claim Two:** There is insufficient evidence to sustain the conviction of homicide/murder as the petitioner is in violation of involuntary manslaughter under Ohio law.

> **Claim Three:** The petitioner was deprived of the effective assistance of counsel in all critical stages of his trial.
>
> **Claim Four:** The petitioner was prejudiced to a fair trial without receiving jury instruction to his self defense. The petitioner has a right to instruction on self defense.

The district court denied the first, third, and fourth claims as procedurally defaulted, denied the second claim on the merits, and declined to issue a COA.

Shortly thereafter, we granted in part and denied in part Petitioner's application for a COA, certifying only Claim Two for review: whether there was sufficient evidence to convict Petitioner of murder.

### III. Preservation of Arguments

As a preliminary matter, we must determine which of Petitioner's arguments are properly before us. In habeas proceedings, generally, this court will not consider an argument that a petitioner has not properly raised in the state or district court. *See generally Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 752–53 (6th Cir. 2011). Further, in the instant matter, we may consider Petitioner's arguments only as they pertain to the sufficiency of the evidence, since anything else would go beyond the scope of the COA. *See Moreland v. Bradshaw*, 699 F.3d 908, 919 (6th Cir. 2012) (citing *Hill v. Mitchell*, 400 F.3d 308, 329, 355 (6th Cir. 2005)).

Petitioner first asserts that that the trial court and prosecution confused the jury by failing to indicate which felonious assault was the predicate felony, and by failing to inform the jurors that they needed to unanimously agree on a single theory of complicity. Essentially, these arguments concern the adequacy of the trial court's jury instructions and whether the jury was actually unanimous, and not whether there was enough evidence for any rational juror to convict Petitioner. *See generally United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014); *cf. Johnson v. Louisiana*, 406 U.S. 356, 362 (1972). Accordingly, these arguments are outside the

4

scope of our COA, and are thereby precluded from our consideration. *See Moreland*, 699 F.3d at 919.

Contrastingly, Petitioner's remaining arguments certainly fall within the scope of our COA. Petitioner asserts that no rational juror could conclude that the felonious assault on Mack proximately caused Jim's death, or that Petitioner was complicit in Kameron's felonious assault of Jim. But the State contends that Petitioner has waived these arguments by failing to raise them before the state court on direct appeal and before the district court. Although Petitioner did not explicitly assert on direct appeal which felony should be the predicate felony, he raised his complicity and proximate-cause arguments when he stated that the evidence failed to show that he "voiced encouragement to his sons during the melee, that he asked for their assistance, cheered them on, or did anything to solicit or incite them to violence," *Mills*, 2011 WL 5444085, at *3 (opinion of Farmer, J.), and that Jim's death was not "the proximate result of the predicate offense of felonious assault." *Id.* Petitioner therefore did not default on these arguments during his state appeal.

Further, Petitioner raised his sufficiency claim in the trial court in his *pro se* federal habeas petition, in which he argues that "[t]here is insufficient evidence to sustain the conviction of homicide/murder as the petitioner is in violation of involuntary manslaughter under Ohio law." Petitioner's *pro se* habeas petition must be construed both liberally and as encompassing any allegation that could support federal relief. *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (per curiam) (citation omitted). Under this standard, Petitioner has preserved his sufficiency challenge, and accordingly, we will address these arguments.

**IV. Sufficiency of the Evidence**

We review the district court's denial of Petitioner's habeas petition *de novo*. *Mendoza v. Berghuis,* 544 F.3d 650, 652 (6th Cir. 2008) (citation omitted). While both parties acknowledge that we review Petitioner's sufficiency claim to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, having "view[ed] the evidence in the light most favorable to the prosecution," *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam), the parties contest whether, pursuant to 28 U.S.C. § 2254(d), we should defer to the Ohio Court of Appeals decision. Specifically, Petitioner asserts that we should not defer to the Ohio Court of Appeals decision because it is a split decision wherein the court did not achieve an undivided rationale for affirming Petitioner's conviction. For the purposes of this decision, we presume Petitioner is correct because his arguments fail under the lesser standard laid out by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), which Petitioner concedes he must overcome.

> The Supreme Court has held the following with respect to *Jackson* claims:
>
> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

*Coleman*, 132 S. Ct. at 2062. Whether the Ohio Court of Appeals decision was objectively unreasonable is only at issue if Petitioner has made the adequate showing that no rational trier of fact could have agreed with the jury. Because Petitioner fails to make such a showing, we need

only address the first layer of deference since it is dispositive. *Cf. Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009); *Phillips v. UAW Int'l*, --- F.3d ----, No. 16-1832, 2017 WL 1337236, at *3 (6th Cir. Apr. 12, 2017).

"Under *Jackson*, evidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman*, 132 S. Ct. at 2064 (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). Further, "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Ibid.*

Regarding felony murder, Ohio law holds that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of [voluntary manslaughter or involuntary manslaughter statutes.]" Ohio Rev. Code § 2903.02(B). Further, felonious assault is a predicate offense for felony murder, even when the felonious assault caused the victim's death. *See* Ohio Rev. Code § 2903.11(D)(1); *see also State v. Miller*, 775 N.E.2d 498, 503–04 (Ohio 2002). The trial court instructed the jury that to find Petitioner guilty of complicity to commit felony murder, they had to find beyond a reasonable doubt that one of the following theories of complicity applied: (1) that "[Petitioner] aided or abetted another in causing the death of [Jim] as a proximate result of [Petitioner] or the person he aided or abetted committing felonious assault"; (2) that "[Petitioner] caused an irresponsible person to cause the death of [Jim] as a proximate result of that other person committing felonious assault"; or (3) that "[Petitioner] solicited or procured another to cause the death of [Jim] as a proximate result of

committing felonious assault." On the basis of the evidence presented at trial, a rational jury could infer that Petitioner was guilty under a theory of complicity to commit felony murder.

First, Petitioner argues that if Kameron's felonious assault on Jim was the predicate offense, then there was not enough evidence to convict Petitioner of being complicit in Kameron's assault on Jim.[1] That argument fails, since the offense of aiding or abetting encompasses support, encouragement, or incitement, if the Petitioner shared the criminal intent of the principal offender. *State v. Johnson*, 754 N.E.2d 796, 797 (Ohio 2001). Here, a rational juror could have concluded that Petitioner knowingly encouraged his son to assault Jim, given that "participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *Id.* at 801 (internal quotation omitted); *see* Ohio Rev. Code 2903.11(A)(1).

Petitioner contests this conclusion, asserting that such a determination would be unreasonable because "[t]here is not a whit of evidence that John had any idea that Jim and Kameron would ever come into physical contact during the fight, let alone that Kameron would feloniously assault Jim . . . [and Petitioner] did not encourage Kameron to hit Jim." Although Petitioner did not instruct Kameron to attack Jim, there is evidence demonstrating that Petitioner knowingly incited his sons to attack anyone who interfered with the fight. A jury could have reasonably concluded that Petitioner attempted to start a fight with Jim when he encouraged Jim to "hit [him]" in the presence of Kameron, and thus intended to include Jim in the fight. A reasonable jury also could have concluded that Petitioner encouraged his sons to attack the

---

[1] Petitioner does not meaningfully contest either that Kameron's assault on Jim was felonious or that Kameron's assault on Jim proximately caused Jim's death. Nor could he. Under Ohio law, a person is guilty of felonious assault if they knowingly cause serious harm to another person. Ohio Rev. Code § 2903.11(A)(1). There was testimony that Kameron swung his board at Jim's head "like a freaking golf club or a ball bat." Based on this testimony, a rational juror could easily conclude that Kameron knowingly caused Jim serious injury. There is no question that those injuries proximately caused Jim's death.

Edwards family with their boards through his own conduct, and that Petitioner knew that his willingness to put a knife to Mack's throat would encourage his sons to continue and escalate the fight. A jury also could have inferred from Petitioner's actions that his sons were following his lead into the fight, or that he likely instilled in his sons his own mantra that "[o]nce a fight starts you finish it." After all, Petitioner led his sons, outfitted with weaponry, into a brawl against the Edwards family. For these reasons, the evidence was sufficient to convict Petitioner of complicity to commit felony murder. *See Harrington*, 562 U.S. at 98.

Petitioner also argues that no rational jury could have found that the assault on Mack proximately caused Kameron to assault Jim. We need not address this argument, because there was sufficient evidence for "*any* rational trier of fact" to find, beyond a reasonable doubt, the essential elements of the crime of complicity to commit felony murder by aiding and abetting Kameron's assault on Jim. *Coleman*, 132 S. Ct. at 2064 (emphasis in original).

## V. Conclusion

Accordingly, we **AFFIRM** the district court's denial of relief.