NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0464n.06

No. 24-3755

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Oct 15, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| TERRY PALMER, | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| DEPARTMENT OF THE UNITED STATES AIR FORCE, | ) ) ) | |
| Defendant-Appellee. | ) ) ) | OPINION |

Before: SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

**ALICE M. BATCHELDER**, **Circuit Judge**. Terry Palmer sued his former employer, Department of the United States Air Force, alleging multiple instances from late 2017 to 2019 of discrimination, based on race and sex, hostile work environment, and retaliation. The district court granted Air Force's motion for summary judgment. We affirm.

**I.**

Terry Palmer, an African American male, began working for the Air Force in 1985 and held a variety of positions throughout his career. In 2017, Palmer's supervisor, Danny Johnson, transferred Palmer out of his position as a military salesman after a series of disputes with his co-workers and supervisors.

The series of events leading to Palmer's initial transfer began when he filed a grievance against two of his supervisors in the military sales directorate, Connie Walker and Danny Johnson,

1

alleging that they had failed to address various complaints filed against him by co-workers containing false accusations. A few months later, after a co-worker accused Palmer of making a threatening gesture toward her, the Air Force sent Palmer a letter of pending investigation, an EAP letter advising he could receive counseling, and a no-contact letter. Accompanied by a witness, Palmer approached Danny Johnson about the incident, but Connie Walker prevented the witness from speaking. Because of this incident with his supervisors, Palmer spoke with the Equal Employment Opportunity office ("EEO") the next day. Later that same day, after Palmer returned from an EEO meeting, Danny Johnson transferred him to Air Force Security Assistance & Cooperation Directorate ("AFSAC").[1] Palmer opposed his reassignment to AFSAC and communicated his opposition to both his superior, Don Thompson, and his union representative.

Palmer's direct supervisor with AFSAC was Elaine Norsworthy. To properly perform his new role at AFSAC, Palmer needed to fill out paperwork (DD Form 2875) removing him from his old system directorate and granting him access to the AFSAC systems. Because Palmer did not complete this paperwork by Norsworthy's stated deadline—nearly two months after he had begun with AFSAC—Norsworthy issued him a written reprimand for failing to follow instructions, which would be removed from his file after two years.

After this reprimand, AFSAC management reassigned Palmer to a different division within AFSAC, but he wanted to be reassigned out of AFSAC entirely. Palmer's disciplinary issues continued in his new division. Despite being instructed by his supervisor, Darla Brumfield, that he did not have the authority to delegate his work assignments, Palmer directed co-workers to

---

[1] Under Air Force procedure, instead of having only the "traditional" EEOC process, Palmer could choose whether he wanted to pursue his complaint via the traditional avenue under the Code of Federal Regulations or the Compressed, Orderly, Rapid, Equitable EEO process ("CORE"). Palmer elected the Traditional EEO Process. 29 CFR § 1614.101-110. The Department of Veteran Affairs issued a Final Agency Decision on Palmer's complaint, giving rise to Palmer's action in the district court.

complete his projects on at least two additional occasions. Accordingly, Brumfield issued Palmer a Notice of Proposed Suspension for failing to follow instructions. After Palmer failed to respond as instructed, he received a five-day suspension, and he then requested a reassignment away from AFSAC.

The day after returning from his suspension, Palmer went on medical leave due to "the stress created by the bogus suspension." This leave lasted for two months, during which time Brumfield and Palmer's other supervisor, Jonathan Landon, repeatedly informed Palmer that Air Force policy required that he file medical documentation if his leave was going to exceed three consecutive workdays. Although Palmer submitted doctor's notes, Brumfield explicitly informed him that the notes did not comply with Air Force requirements. One week after Palmer returned to work, management issued him a Notice of Proposed Removal, charging him with being absent without leave ("AWOL") and failing to complete his assigned duties. Palmer voluntarily retired prior to the hearing on the Notice.

Palmer filed suit against the Department of the Air Force in federal court bringing three claims: race and sex discrimination, hostile work environment, and retaliation. The district court granted summary judgment to the Air Force on all three claims. Palmer now appeals.

## II.

We review a district court's award of summary judgment de novo. *Moore v. Coca-Cola Bottling Co.*, 113 F.4th 608, 617 (6th Cir. 2024). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 510 (6th Cir. 2022). We view the evidence in the light most favorable to

the non-moving party. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016).

## III.

A. Race and Sex Discrimination Claims

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any employee based on that employee's race or sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove unlawful discrimination through either direct or circumstantial evidence. *Jackson*, 814 F.3d at 775. When, as here, a plaintiff relies on circumstantial evidence, this court applies the *McDonnell Douglas* burden-shifting framework. *Moore*, 113 F.4th at 622 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

The *McDonnell Douglas* framework proceeds in three steps. First, the plaintiff must establish a prima facie case of workplace discrimination, *i.e.*, that the plaintiff is (1) a member of a protected class; (2) qualified for his job; (3) suffered an adverse employment decision; and (4) was treated differently than similarly situated non-protected employees. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021). Second, if the plaintiff can make such a case, the burden shifts to the employer to identify "a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Third, if the employer does so, the burden returns to the plaintiff, who must then demonstrate that the employer's "proffered reason was merely pretext" for the adverse employment action. *Id.*

The Air Force does not contest the first two prongs of this standard. Therefore, viewing the evidence in the light most favorable to Palmer, we must consider whether the Air Force subjected him to an adverse employment action and whether it treated a comparable non-protected employee differently.

An adverse employment action is a "disadvantageous change in an employment term or condition" because of the employer's actions. *Muldrow v. City of St. Louis*, 601 U.S. 346, 347 (2024); *see also Bilyeu v. UT-Battelle, LLC*, -- F.4th --, 2025 WL 2754017, at *5 (6th Cir. Sept. 29, 2025). Palmer contends—without citing any legal support—that four actions by the Air Force constitute adverse employment actions: (1) his reprimand for failing to follow instructions, (2) his five-day suspension, (3) his AWOL charge, and (4) his notice of proposed removal.

The written reprimand and notice of proposed removal do not qualify as adverse employment actions because the undisputed facts establish that neither action resulted in changes to the terms or conditions of Palmer's employment. The letter of reprimand was simply placed in his personnel file (to be removed after a two-year period), and he resigned before a final decision was made regarding his proposed removal. *Harrell v. Delaware N. Companies*, 642 F. App'x 543, 545 (6th Cir. 2016) ("One who voluntarily resigns may not bring a claim under Title VII . . . ."). Even if his suspension or AWOL charge were an adverse employment action, Palmer's prima facie case fails because he cannot identify any "comparators," *i.e.*, similarly situated employees who were treated more favorably.

Palmer identifies only one proposed "comparator," Angela Brown. He must prove that she was similarly situated to him "*in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). To meet this standard, Palmer must show that he and Brown "[1] dealt with the same supervisor, [2] have been subject to the same standards, and [3] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* While Palmer is not required to show that his actions and those of his comparator were identical, he must establish that they "were of comparable seriousness." *Jackson*, 814 F.3d at 777 (citation omitted).

5

Palmer has offered no evidence (nor has he even asserted) that Brown engaged in conduct similar to the behavior for which he was disciplined. Nor has he offered evidence to dispute his own behavior. To recap, Palmer did not comply with his supervisor's directives to complete his transfer paperwork by the specified deadline, he repeatedly delegated tasks despite being explicitly instructed not to, and he failed to submit medical documentation pertaining to his leave in accordance with defined Air Force requirements. Brown had no analogous performance issues. Rather, Palmer's reference to Brown is based on a single incident in which Brown became agitated and threw an object across the room during a conversation with Palmer, and Palmer's personal belief that Brown had not behaved similarly toward caucasian employees. Also, Palmer offered his own perception that, unlike him, Brown did not "know her job very well." Even assuming Palmer's claims are factually accurate, Palmer was not disciplined for emotional outbursts similar to Brown's, but rather for his documented performance inadequacies. S*ee Dodd v. Donahoe*, 715 F.3d 151, 156 (6th Cir. 2013) (finding that plaintiff did not identify a valid comparator because there were no allegations of similar actions). Accordingly, Palmer's discrimination claims fail because he cannot establish a prima facie case under step one of the *McDonnell Douglas* framework.

### B. Hostile Work Environment Claim

Palmer has produced no evidence supporting his hostile work environment claim. Title VII protects employees from working in a hostile environment. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009). To establish such a claim based on race or gender, Palmer must show that "(1) [he] belongs to a protected class; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on race [or sex]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action." *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017). Title VII does not impose

a "code of workplace civility," and the harassment must surmount a "relatively high bar" for it to create a hostile work environment. *Id.* at 327-28 (citation omitted).

Palmer misses the mark as to both race and sex. Palmer's allegations of hostile work environment are based solely on his own subjective personal perceptions and do not include reference to a single specific incident or remark related to his race or sex. Instead, he relies on "an inference of racial discrimination" based on the disciplinary actions taken against him—actions that, as the record demonstrates, were based on his poor performance and failure to follow procedures. Accordingly, Palmer's hostile work environment claim fails for lack of any supporting evidence.

### C. Retaliation Claim

Palmer's retaliation claim also fails. Title VII makes it unlawful for an employer to retaliate against an employee who opposes a discriminatory practice. 42 U.S.C. § 2000e-3(a). As with Palmer's discrimination claim, because he relies on circumstantial rather than direct evidence, the burden shifting framework of *McDonnell Douglas* applies. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 649 (6th Cir. 2015). To establish a prima facie case of retaliation under Title VII, Palmer must establish that he (1) "engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against [him], and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Palmer makes three allegations of retaliatory conduct.

First, Palmer claims that after he returned from an EEO meeting, his supervisor, Norsworthy, informed him that he was being reprimanded and when he asked why, she offered no explanation. But by Palmer's own admission, Norsworthy did not know what the EEO meeting

was about. Further, this interaction took place on December 12, 2017, but a Notice of Reprimand was not issued until February 12, 2018, followed by a formal letter of reprimand on April 4, 2018. This claim fails because a written reprimand by itself does not constitute an adverse employment action and, even if it did, Palmer has provided no evidence that the reprimand was related to his EEO meeting. *See Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013) (explaining that written reprimands without a materially adverse consequence are not adverse employment actions).

Second, Palmer claims Brumfield threatened him with being marked AWOL for arriving late to work on the day of an EEO appointment. But a mere threat to charge Palmer with being AWOL is not an adverse employment action. *See Bilyeu*, -- F.4th -- , 2025 WL 2754017, at *6 (explaining that, after *Muldrow*, the plaintiff must still show a "materially adverse" action—that is, "he faced an adverse action that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination" (citation modified)). Moreover, Palmer cannot show a connection between the AWOL threat and the EEO appointment. He was threatened with being marked AWOL *because he was late*—a fact he does not dispute. Palmer alleged that 367 hours of AWOL was charged against him in retaliation for his filing a congressional complaint. But Palmer does not dispute that by the time he filed the complaint on September 6, 2018, after informing his supervisor he was planning to do so, he had already been out of the office for one month. During that month, Palmer's supervisors had informed him on several occasions that he must comply with the Air Force's medical documentation policy, had directed him to the applicable provisions, and had warned him that failure to provide the necessary documentation would result in his being charged AWOL. Although Palmer disagrees with the import of his supervisor's well-documented directives, explicit warnings, and concerns, he does not dispute that they pre-dated any notice of his congressional complaint. Furthermore, Palmer

was still given an opportunity to provide the required documentation even *after* his supervisors became aware of his congressional complaint. Palmer cannot show a causal connection between his filing a congressional complaint and the AWOL charge. He therefore cannot support a retaliation claim.

## IV.

Based on the foregoing, we **AFFIRM** the judgment of the district court.