NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0568n.06

No. 18-1489

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ESTEFANY MARTINEZ-GONZALEZ and
IMELDA LUCIO LOPEZ,

       Plaintiffs-Appellants,

v.

LAKESHORE STAFFING, INC. and RANDELL
G. PRICE,

       Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Nov 09, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

---

**BEFORE: THAPAR, BUSH, and NALBANDIAN, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** Appellants Estefany Martinez-Gonzalez ("Martinez")

and Imelda Lucio Lopez ("Lopez") claim that Appellees Lakeshore Staffing, Inc. ("Lakeshore")

and its President and Owner Randell G. Price ("Price") unlawfully discriminated against them, in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)(2), and the Michigan

Elliot Larsen Civil Rights Act, M.C.L. § 37.2101. They appeal the district court's decision to grant

summary judgment to Appellees.[1] We **AFFIRM** the district court's decision.

## I.    BACKGROUND

Lakeshore supplies employees to nineteen McDonald's locations in the West Michigan

area. This appeal concerns the McDonald's located at West Leonard Street in Grand Rapids. The

categories of employees at this restaurant are managers, maintenance employees, and "crew". The

---

[1] The district court granted Lakeshore's motion to dismiss Martinez and Lopez's Equal Pay Act claim with
prejudice, as they agreed to withdraw that claim. Martinez and Lopez do not appeal this dismissal.

written Job Description states that "crew" includes "crew trainee, express person, front counter, grill cook, assembler, dress assembler, made-for-you line, [and] fry cook." All crew employees have responsibilities that include to "[k]eep general [the] area clean" and to "[c]onduct sweeps and mops."

Lakeshore has employed Martinez and Lopez at the West Leonard Street location since 2009. Both are Hispanic and of Mexican national origin and speak Spanish as their primary language. On October 18, 2016, they filed their complaint, alleging that Lakeshore and Price engaged in three types of discrimination: (1) discrimination and disparate treatment based on Appellants' national origin because they were required to, among other things, sweep the interior and exterior of the restaurant, clean doors and windows, clean bathrooms, take out trash, and remove ice during the winter, while similarly situated non-Hispanic employees were not required to do these tasks; (2) unequal pay based on their national origin because they did not receive regular raises and were compensated less than other similarly situated non-Hispanic employees; and (3) workplace harassment[2] because, among other things, they were expected to perform the above-mentioned "menial work;" they were told to speak English in the workplace because of an "English-only" policy; they were disciplined when similarly situated non-Hispanic employees were not; and they were treated poorly by management.

On November 30, 2017, Lakeshore and Price moved for summary judgment, arguing that Martinez and Lopez failed to demonstrate a genuine issue of material fact as to whether Lakeshore and Price discriminated against them and harassed them because of their national origin. The district court granted the motion, holding that Martinez and Lopez failed to demonstrate a genuine issue of material fact regarding whether they were discriminated against and received unequal pay,

---

[2] The district court and the parties treated this as a Title VII hostile work environment claim.

and that the workplace harassment did not rise to the level of a hostile work environment. Martinez and Lopez timely filed a notice of appeal.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016). Summary judgment is appropriate only if there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law,' this [c]ourt must view all of the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Id.* (quoting *Anderson*, 477 U.S. at 251–52). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. UNDISPUTED FACTS

We begin by addressing the primary issue raised by Martinez and Lopez on appeal: that the district court engaged in a credibility analysis when reviewing the declarations and depositions submitted into the record by both parties. Specifically, Appellants argue that the district court impermissibly weighed the credibility of witnesses when conflicting testimony existed concerning (1) the job title and responsibilities of both Martinez and Lopez; (2) their pay rates and raises; and

(3) whether there was an English-only policy. They contend that these material factual disputes preclude summary judgment because those disputes should be resolved by the trier of fact.

Accordingly, before determining if Martinez and Lopez have sufficient evidence for a jury to decide their case, we first consider what the undisputed evidence is.

## A. Job Title and Responsibilities

Martinez and Lopez's job title and duties are material to the resolution of their claims. Thus, the first inquiry is whether a conflict exists between the facts presented by both parties. Furthermore, even if there is a factual dispute, "'[t]he mere existence of *some* alleged factual dispute between the parties w[ould] not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Scott*, 550 U.S. at 380 (emphasis in original) (quoting *Anderson*, 477 U.S. at 247–48); *see also Klepper v. First Am. Bank*, 916 F.2d 337, 341–42 (6th Cir. 1990) (noting that "there must be evidence on which the jury could reasonably find" for the non-moving party (quoting *Anderson*, 477 U.S. at 252)). A party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (citing *Anderson*, 477 U.S. at 249–50).

Lakeshore and Price submitted a sworn declaration by Lakeshore's Human Resources Director, Saundra Sue Brophy. Brophy attested that Martinez and Lopez were hired to serve as crew. Martinez and Lopez do not contest that this fact. Instead, they argue that although Lakeshore classified them as crew, they nonetheless were supposed to work as cooks with the primary responsibility of preparing food; as a result, they should not have had to engage in "menial tasks" such as cleaning the bathroom, taking out the trash, and de-icing.

Because neither Martinez nor Lopez contests that she was hired as crew, we find that it was not error for the district court to determine that there existed no factual dispute concerning the actual job title of "crew" for both Martinez and Lopez. The remaining issue then, is what the scope of their job as crew was—particularly if it was limited to cooking, as they claim.

As a part of her declaration, Brophy appended the written Job Description of crew, which includes the word "cook" as a type of crew, but also includes "conduct[ing] sweeps and mops" and "keep[ing the] general area clean" under the job responsibilities of all crew. Lakeshore and Price submitted declarations from similarly situated non-Hispanic crew at the Leonard Street restaurant stating that, in addition to cooking, they regularly perform the so-called menial tasks, and declarations from managers confirming that they regularly assign these tasks to all of the crew. Additionally, both parties cite the testimony of Lakeshore's Director of Operations, William Savickas. He explained that the menial tasks are secondary job duties for the crew. For example, while janitors are expected to thoroughly clean windows, the crew are also expected to spot clean the windows throughout the day.

On appeal, Martinez and Lopez couch their argument in terms of credibility, arguing that the district court improperly weighed Martinez's deposition testimony, attesting that she was hired as a cook, against the declarations and deposition testimony offered by Lakeshore and Price, attesting that the crew routinely partake in the allegedly menial tasks. However, the evidence from the parties does not conflict; thus, there was nothing for the district court to weigh. That Martinez believes she was hired to work as a cook does not conflict with the declarations attesting that crew regularly conduct tasks outside of cooking, nor does it conflict with the Job Description detailing that all crew, including cooks, engage in the so-called menial tasks. Martinez and Lopez cite to no other evidence or declarations demonstrating that a similarly situated non-Hispanic crew

member's job was limited solely to cooking. In fact, Martinez and Lopez admit that they have no knowledge as to whether any non-Hispanic crew were asked to complete the allegedly menial work assignments they detailed in their complaint. Thus, unlike the "differing verbal accounts of what transpired" in *Nelms v. Wellington Way Apartments, LLC*, the district court appropriately determined that the evidence submitted by Martinez and Lopez, including their deposition testimony, "do[es] not contradict the fact that other crew members routinely and regularly perform the same . . . tasks Martinez and Lopez were required to do." 513 F. App'x 541, 548 (6th Cir. 2013).

Accordingly, we find that it is undisputed that Martinez and Lopez were hired as crew and that all crew employees regularly sweep the interior and exterior of the restaurant, clean doors and windows, clean bathrooms, and take out trash, in addition to cooking food.

### B. Pay Rate and Pay Raises

Martinez and Lopez also claim that the district court improperly made a credibility assessment by weighing the testimony submitted by both sides regarding their unequal pay claim. They contend the district court erroneously concluded that the facts do not support that Martinez and Lopez were paid less, or received lower and fewer raises, than similarly situated, non-Hispanic employees. Thus, we consider whether any factual dispute exists as to whether Martinez and Lopez's pay, including the amount and timing of their raises, was incommensurate with similarly situated non-Hispanic crew employees.

Lakeshore's pay policies, as well as the pay rates for crew employees at the Leonard Street restaurant, were put into the record. Martinez and Lopez do not contest the Pay Rate Spreadsheet submitted by Lakeshore; in fact, they use the data in support of their argument that "[t]here are

various other employees of Lakeshore Staffing who work at the same location, and who make more than Plaintiffs."

Again, the evidence from the parties does not conflict;[3] upon review of the Spreadsheet that both sides cite, we find the district court correctly concluded that Martinez and Lopez were among the highest-paid of all crew employees. Martinez and Lopez's claim that they were underpaid in comparison to similarly situated non-Hispanic crew is "belied by 'objective evidence in the record.'" *Nelms*, 513 F. App'x at 548 (quoting *Coble v. City of White House*, 634 F.3d 865, 869 (6th Cir. 2011)). Thus, the district court did not err when it determined that no genuine issue of material fact exists as to whether Martinez and Lopez were paid in accordance with similarly situated crew.

As to whether Martinez and Lopez received timely and comparable raises, the Spreadsheet includes the wage rates of the crew employees at the West Leonard Street restaurant, including the dates when they received pay increases and the amounts of the increases. Martinez and Lopez did not argue before the district court that this information is incorrect, and again, they used the Spreadsheet to point to similarly situated employees who had larger wage increases and shorter gaps between raises. The district court noted that although Martinez and Lopez "cite individuals that on occasion received larger raises than they did," they "fail to address the fact that other employees received smaller raises and there were large gaps between raises."

On appeal, Martinez and Lopez argue that the district court engaged in a credibility determination, finding that Lakeshore was more credible when stating that Martinez and Lopez "cherry-pick[ed] employees' pay data to fit their narrative." However, the district court's

---

[3] Martinez testified that she was aware of two Hispanic employees, one of whom is not a crew employee, who were paid more than she was. The issue, however, is whether similarly situated **non-Hispanic crew** were paid more than Martinez and Lopez. Thus, it was not error for the district court to conclude that Martinez and Lopez were frequently paid more than non-Hispanic crew.

assessment that Martinez and Lopez selectively pointed to certain employees while ignoring pay data of other non-Hispanic crew was not a credibility assessment; rather, it was a consideration of whether a proper factual dispute exists. The district court did not accord more weight to Lakeshore and Price's evidence; instead, the court reviewed the Spreadsheet (relied upon by both sides) and determined that while *some* employees had larger wage increases and shorter gaps between raises, *other* non-Hispanic crew had smaller wage increases and longer gaps between raises. *See Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018) ("[T]he nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" (quoting *Moore*, 8 F.3d at 340)).

Upon a review of the record evidence, we find that the district court did not err when determining that it is undisputed, based on the objective record evidence, that certain non-Hispanic crew have smaller and fewer wage increases than Martinez and Lopez. Thus, Martinez and Lopez were not paid in a manner incommensurate with similarly situated, non-Hispanic crew.

## C. English-Only Policy

Martinez and Lopez also argued that there was an unofficial workplace policy and culture of speaking English-only, at the exclusion of Spanish. The district court concluded that there is no genuine dispute of material fact because "the affidavits [submitted by Lakeshore and Price] consistently state that there is no policy regarding the language to be spoken at the Leonard Street McDonald's, and that Spanish is regularly spoken." Martinez and Lopez argue that they provided testimony that English-only was the unofficial policy, and thus, in giving greater weight to Lakeshore and Price's evidence, the district court inappropriately engaged in a credibility determination.

The district court reviewed numerous uncontested declarations from at least seven crew and managerial employees attesting that they regularly speak Spanish in the workplace, know of others who regularly speak Spanish in the workplace, and have never disciplined others for speaking Spanish. Human Resources Director Brophy also stated that Lakeshore does not have a policy or practice of prohibiting employees from speaking Spanish.

We find that the district court correctly concluded that there does not appear to be a genuine factual dispute regarding the non-existence of an English-only policy. Again, it is not that the district court engaged in a credibility determination between the depositions of Martinez and Lopez and the declarations submitted by Lakeshore and Price; instead, when evaluating a motion for summary judgment, the district court had an obligation to determine if the record establishes that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotations and citation omitted).

Taking the record as a whole, no reasonable finder of fact could find that Lakeshore had a policy and culture of requiring its employees to speak only English. Lakeshore and Price filed seven declarations demonstrating that the so-called English-only policy could not exist because employees attested that they speak Spanish in the workplace or know of employees who openly speak Spanish in the workplace without reprimand. Martinez and Lopez do not contest either the factual veracity or the legal significance of the declarations. Instead, in support of their argument, Martinez and Lopez cite to two instances where Martinez stated she was told to speak English and

one instance where Lopez testified she was told to speak English.[4]  Martinez and Lopez cite no disciplinary records in which they were reprimanded because they were speaking Spanish.  Even assuming that these incidents occurred, the isolated incidents over the course of Martinez and Lopez's approximately eight-year employment with Lakeshore do not give us reason to believe there is a genuine issue of fact as to whether there is a practice of requiring employees to only speak English at the West Leonard Street restaurant.

## IV.    ANALYSIS

We next turn to an application of the undisputed facts to the appropriate legal standards.

### A.  Prima Facie Case of National Origin Discrimination

As noted, Martinez and Lopez brought claims against Lakeshore and Price alleging national origin discrimination pursuant to Title VII, 42 U.SC. § 2000(e)(2), and the Michigan Elliott Larsen Civil Rights Act, M.C.L. § 37.2101.  The parties agree that the analysis for discrimination claims is the same for both statutes.  *See In re Rodriguez*, 487 F.3d 1001, 1008 n.2 (6th Cir. 2007); *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004); *Lytle v. Malady*, 579 N.W.2d 906, 914–15 (Mich. 1998); *Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993).

The burden to establish a prima facie case of employment discrimination is on the plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To establish a prima facie case, a plaintiff must show that (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was "treated differently than similarly situated non-protected employees."  *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406

---

[4] At other points in their testimony, Lopez and Martinez stated that they believe the managers wanted them to speak English, but they do not discuss specific conversations, other than the three stated above, that led them to hold this belief.

(6th Cir. 2001). The parties agree that the first two elements are met, so we will address only the last two requirements.

### 1. Adverse Employment Action

"An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). "Under this standard, a materially adverse change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation and internal quotation marks omitted).

Martinez and Lopez argue that they suffered adverse employment action because they "were asked to perform menial tasks that were not within their job description." However, as detailed earlier, it is undisputed that Martinez and Lopez were crew, and that all crew, including cooks, regularly undertake the allegedly menial tasks of cleaning areas of the restaurant, including the bathroom; sweeping; and taking out the trash. Martinez and Lopez have therefore failed to establish that their job duties were altered in such a way as to constitute an adverse employment action.

Thus, the district court correctly determined that Martinez and Lopez failed to establish an adverse employment action as required to state a prima facie case.[5]

---

[5] Martinez also asserted below that she was written-up on multiple occasions when similarly situated employees would not have been disciplined. The district court held that the write-ups did not constitute materially adverse employment actions because the disciplinary actions were based on legitimate workplace violations and because the disciplinary actions failed to impact Martinez's salary or professional advancement. Martinez does not appear to raise an assignment of error with respect to this holding. However, Martinez and Lopez do raise as error the court's determination that the disciplinary actions, taken in totality with other issues, demonstrate actionable harassment in the workplace. We analyze this argument below, in connection with the harassment claim.

### 2. *Different Treatment than Similarly Situated Employees*

Because we find that Martinez and Lopez have not presented sufficient evidence for a jury to find adverse employment action, as required to state a prima facie case of national origin discrimination, we need not examine disparate treatment. Accordingly, we hold that the district court correctly granted summary judgment as to claims one and three.

### B. Prima Facie Case of Pay Discrimination

Martinez and Lopez's claim of unequal pay is also premised on national origin discrimination, in violation of Title VII, 42 U.S.C. § 2000(e). The same prima facie showing is required for this alleged violation of Title VII, as detailed earlier.

Martinez and Lopez argue that they suffered an adverse employment action because they were not given timely raises as required by company policy, and, as a result, they received less compensation than they were entitled to. They also argue that they received less pay and fewer and lower pay raises than similarly situated non-Hispanic employees. The district court briefly analyzed whether Martinez and Lopez demonstrated that they suffered an adverse employment action and spent the majority of its analysis on whether Martinez and Lopez were treated differently than similarly situated non-Hispanic crew. Ultimately, the court concluded that Martinez and Lopez could not demonstrate this prong of disparate treatment, and therefore, they did not have sufficient evidence to establish a prima facie case of pay discrimination.

The district court's holding is correct. As detailed above, it is undisputed that Martinez and Lopez were among the highest-paid crew employees and thus, they were generally paid higher than non-Hispanic crew employees. It is also undisputed that some similarly situated non-Hispanic

---

Martinez and Lopez also allege that Lakeshore and Price committed an adverse employment action by failing to give them raises as required under company policy. We examine this claim in connection with the pay discrimination claim.

crew employees had lower wage increases and longer gaps between their raises. Accordingly, even assuming that Martinez and Lopez were subjected to adverse employment action because they did not receive raises in accordance with company policy, they cannot show an essential element of prima facie discrimination—that they were treated differently than other similarly situated non-Hispanic crew.

Therefore, we hold that the district court correctly granted summary judgment as to claim two of unequal pay based on national origin.

## C. Harassment

The fifth and final claim of the complaint is entitled "Harassment" and references national origin. The parties and the district court treated this claim as a Title VII claim, and on appeal, the parties continue to address it as such. For a Title VII hostile-work-environment claim to be actionable, the harassment must be "severe" or "pervasive" so as to "alter the conditions of employment and create an abusive working environment." *Jones v. City of Franklin*, 468 F. App'x 557, 565 (6th Cir. 2012). To determine whether harassment qualifies as severe or pervasive, we "examin[e] . . . all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002) (citation omitted). "Significantly, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation marks omitted)). Thus, "occasional offensive utterances do not rise to the level required to create a hostile work environment because, 'to hold otherwise would risk changing Title VII into a code of workplace civility.' Accordingly,

this court has found even offensive and bigoted conduct insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough . . . ." *Id.* (citing *Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x. 421, 432 (6th Cir. 2014) (no hostile work environment where plaintiff was subjected to race-based comments and his supervisor also engaged in this activity); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707–08 (6th Cir. 2007) (fifteen racially-motivated comments and instances of disparate treatment over a two-year period were isolated, not pervasive, and therefore not actionable under Title VII)) (other citations omitted).

On appeal, Martinez and Lopez argue that "the intense factual history and issues of credibility" regarding the workplace environment should have been left to the trier of fact to resolve. They continue to maintain that the alleged de facto English-only policy, combined with multiple instances when they were spoken to impolitely by supervisors, one instance when they overheard a derogatory comment by one of their co-workers concerning illegal immigration by Mexicans, and two disciplinary notices that Martinez received for workplace transgressions—arriving to work late and failing to tuck in her shirt—when others would not receive notices for minor transgressions, rise to the level of Title VII harassment.

Again, contrary to Martinez and Lopez's claim, the district court did not engage in a credibility assessment. First, as discussed earlier, the district court correctly determined that Martinez and Lopez did not establish a genuine issue of material fact concerning an unofficial English-only policy. Next, as to their other claims of workplace harassment, the court found that even assuming the veracity of the incidents, the incidents demonstrate "a work environment that is, at times, mere[ly] unfriendly" because of "a handful of unpleasant situations and encounters." The court held that this is not actionable under Title VII as severe and pervasive harassment. *See Jones*, 468 F. App'x at 565. Thus, the district court did not engage in a credibility determination,

but rather accepted the allegations as true and found them insufficient to give rise to a Title VII claim. For example, the court reviewed Martinez and Lopez's deposition transcripts submitted as part of the summary judgment briefing and determined that conclusory statements such as "Charlotte only acted [rudely]" towards Martinez and Lopez did not assert a connection to national origin and failed to demonstrate an objectively hostile work environment.

"[T]his court has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory. The misconduct alleged here—a handful of offensive comments . . . over [an eight]-year period—does not clear that bar." *Phillips*, 854 F.3d at 328. The incidents were isolated and not pervasive or severe enough to alter the terms and conditions of Martinez and Lopez's employment with Lakeshore. "Isolated incidents . . . unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). Therefore, the district court did not err in holding that Martinez and Lopez failed to create a genuine issue of material fact that they were subject to a hostile work environment.

## D. Randell Price

The district court held that because it granted Lakeshore's summary judgment motion as to all of the claims, there was no remaining liability to extend to Price. We affirm the district court's ruling in favor of Price because Martinez and Lopez make no argument on appeal for reversal of this aspect of the court's ruling.

## V.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.